**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **DILLON S. WEBB,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. _____** |
| ) | |
| **TRAVIS M. ENGLISH, JOHN DOE,** ) | |
| **JOHN DOE 2, COLUMBIA COUNTY** ) | |
| **SHERIFF'S OFFICE, AND** ) | |
| **SHERIFF MARK A. HUNTER,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

COMES NOW Plaintiff Dillon S. Webb ("Webb"), and for his claims and relief against Defendants Travis M. English ("Officer English"), John Doe ("Officer Doe"), John Doe 2 ("Officer Doe 2"), the Columbia County Sheriff's Office ("CCSO"), and Sheriff Mark A. Hunter ("Sheriff Hunter"), alleges and states as follows:

## INTRODUCTION

This is a civil rights lawsuit seeking to vindicate Webb's right to freedom of expression under the First Amendment to the United States Constitution and his right to be free from unreasonable and suspicionless searches and seizures under the Fourth Amendment to the United States Constitution.

While driving on a Sunday evening in May 2019, Webb was pulled over by Officer English, a law enforcement officer with the Columbia County Sheriff's Office, because Officer English disapproved of the content of Webb's speech contained on a custom-made bumper sticker on Webb's pickup truck. Officer English initially provided Webb with a notice to appear in court.

Webb complied with all of Officer English's commands with one exception: he refused to change the content of the speech contained on his bumper sticker.

When Webb refused to change the content of the speech on his bumper sticker to speech that Officer English requested and instead expressly asserted his rights under the First Amendment, Officer English consulted with another law enforcement officer, Officer Doe. Together, the two officers—acting pursuant to a pattern, practice, policy, or custom of the Columbia County Sheriff's Office—opted to accuse Webb of resisting arrest, to arrest him, to take him to jail, and—in the words of Officer Doe—to "tow his shit."

Webb, offering no resistance, was then handcuffed and transported in the back of a police car to the Columbia County Detention Facility. Once he arrived at the detention facility, Webb was confronted by Officer Doe 2. Webb was fingerprinted, booked, strip searched, required to stand for a mugshot, and placed inside a jail cell by Officer Doe 2. Webb's vehicle was placed on a tow truck even though Webb's mother, who had arrived on the scene, asked to drive it home; Officer English said he did not want Webb's bumper sticker "on the streets of Columbia County." Webb was only released from jail after posting $2,500.00 bail. Webb also had to pay to get his vehicle back and was forced to miss time at work. Furthermore, Webb was issued a bill for his incarceration in the Columbia County jail. The expenses incurred as a direct result of the unlawful actions of the defendants caused Webb to lose his vehicle due to the costs associated with his unlawful arrest and incarceration.

The actions of law enforcement egregiously violated Webb's constitutional rights. Webb seeks damages and injunctive relief.

## PARTIES

1.     Webb is, and at all times relevant was, a resident of Lake City, Florida.

2.     Officer English was, at all times relevant, a law enforcement officer employed by the CCSO in Columbia County, Florida. He is sued in both his individual capacity and in his official capacity as a law enforcement officer.

3.     Officer Doe was, at all times relevant, a law enforcement officer employed by the CCSO. His full name and identity is not yet known but will be reasonably obtainable through discovery. He is sued in both his individual capacity and in his official capacity as a law enforcement officer.

4.     Officer Doe 2 was, at all times relevant, a law enforcement officer employed by the CCSO. His full name and identity is not yet known but will be reasonably obtainable through discovery. He is sued in both his individual capacity and in his official capacity as a law enforcement officer.

5.     Defendant CCSO was, at all times relevant, a governmental entity responsible for providing law enforcement services in Columbia County, Florida.

6.     Defendant Sheriff Hunter was, at all times relevant, the elected sheriff of Columbia County and was responsible for overseeing the CCSO, the governmental entity responsible for providing law enforcement services in Columbia County, Florida. He is sued in his individual capacity.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to Title 28, United States Code, Sections 1331 and 1343(a)(3).

8.     Venue lies in this Court pursuant to Title 28, United States Code, Section 1391(b).

## FACTS COMMON TO ALL COUNTS

9.      On Sunday, May 5, 2019 at approximately 5:50 p.m., Webb was driving his brown Chevrolet pickup truck on a public street within the Middle District of Florida.

10.     At that time, Officer English was on duty with the CCSO patrolling the streets in a police vehicle.

11.     At that time, Webb was obeying all traffic laws.

12.     At that time, Officer English executed a traffic stop of Webb's vehicle because Webb's truck displayed a custom-made bumper sticker on the rear glass window which contained the words, "I EAT ASS" (hereinafter, the "bumper sticker").

13.     Officer English did not execute the traffic stop based on any alleged violation of any traffic law.

14.     After approaching Webb's vehicle, Officer English asked Webb what the bumper sticker meant.

15.     Officer English told Webb that the bumper sticker was "derogatory."

16.     Officer English ordered Webb to exit his vehicle.

17.     Officer English conducted a pat down search of Webb's person and clothing.

18.     Officer English stated that he has four children and that he would be "furious" if his 6-year old child asked him what Webb's bumper sticker meant.

19.     During this traffic stop, Webb was detained and was not free to leave.

20.     Officer English issued Webb a notice to appear in court on May 23, 2019 at 8:00 p.m.

21.     At Officer English's direction, Webb signed the notice to appear.

22.     After Webb signed the notice to appear, Officer English ordered Webb to remove one of the letters from the word "ASS" on the bumper sticker so as to change the content of the speech on the bumper sticker to read "AS" or "SS" rather than "ASS."

23.     Webb refused to change the content of the speech on his bumper sticker to replace the word "ASS" with Officer English's requested speech.

24.     Webb stated to Officer English that he has a First Amendment right to display the bumper sticker without modifying its content.

25.     After Webb invoked his First Amendment right to maintain, and not to change, the content of his speech, Officer English ordered Webb to remain at the scene and Officer English returned to his police vehicle.

26.     In his police vehicle, Officer English initiated communication with Officer Doe, another law enforcement officer on duty with the CCSO.

27.     Officer English stated to Officer Doe, "I pulled Mr. Dillon Webb over because he has a statement on the back of his truck that says, 'I EAT ASS.'"

28.     Officer English and Officer Doe discussed the fact that Webb refused to remove one of the letters from the word "ASS" at Officer English's direction.

29.     Officer Doe stated, "take him to jail and tow his shit."

30.     Officer Doe's use of the word "shit" referred to Webb's vehicle.

31.     Officer English and Officer Doe again conferred and discussed that the bumper sticker contained the words "I EAT ASS" in all capital letters.

32.     Officer Doe stated, "arrest him, take him to jail, tow his shit" and then stated, "that way, you can get it off the road."

33.     Officer English notified Webb that he was rescinding the notice to appear.

34.  Officer English then arrested Webb, stating, "you're going to jail, son."

35.  When Webb asked why he was being arrested, Officer English stated, "because I gave you the option to take that off your window… I asked you to take it off and you refused."

36.  Officer English characterized Webb's refusal to change the content of the bumper sticker as "resisting an officer without violence."

37.  Officer English arrested Webb because Webb declined to change the content of the speech on the bumper sticker to a message requested by Officer English (*i.e.* "I EAT AS" or "I EAT SS").

38.  Officer English had no legitimate power to compel Webb to say or display the words, "I EAT AS," or the words, "I EAT SS."

39.  Officer English had no legitimate power to prohibit Webb from displaying the words, "I EAT ASS."

40.  Officer English had no legitimate power to prohibit Webb from operating a vehicle with a bumper sticker that read, "I EAT ASS."

41.  Officer English informed Webb that he would not have arrested Webb if Webb had changed the content of his speech to read, "I EAT AS" or "I EAT SS," but that he was being arrested because Webb decided to preserve the content of his speech to read, "I EAT ASS."

42.  After Officer English arrested Webb, but before leaving the scene, Webb's mother arrived and spoke with Officer English.

43.  Officer English informed Webb's mother that Webb was "going to jail" because he "refused" to "remove one of the letters" on his bumper sticker.

44.  Webb again stated, while in custody and in the presence of Officer English, that his rights under the First Amendment were being violated.

45.     Webb's mother requested that she be permitted to drive Webb's vehicle home instead of having it towed by law enforcement.

46.     Officer English refused to let Webb's mother drive the vehicle, stating, "it has derogatory letters on the back of the window and I don't want it on the streets of Columbia County."

47.     Officer English had no legitimate authority to remove Webb's vehicle with the bumper sticker from "the streets of Columbia County."

48.     Officer English had no legitimate authority to remove the words, "I EAT ASS," from the "streets of Columbia County."

49.     A police officer has no legitimate authority to arrest an individual or to impound that individual's vehicle because the officer does not want certain words displayed on the vehicle.

50.     Officer English caused Webb's vehicle to be placed on a tow truck and, in doing so, removed the bumper sticker with the words, "I EAT ASS," from the "streets of Columbia County."

51.     Webb's mother informed Officer English that she recently saw a vehicle with the same message displayed on it to which Officer English responded, "when I see that one, I'll pull it over also."

52.     Officer English stated to Webb's mother, "[Webb] didn't have to remove the whole thing, just one of the letters off of the word, 'ASS,' and he refused."

53.     "I EAT ASS," "I EAT AS," and "I EAT SS" all reflect different messages with different content.

54.     "I EAT ASS" has a different meaning than "I EAT AS."

55.     "I EAT ASS" has a different meaning than "I EAT SS."

56.     "I EAT ASS" has many meanings. For example, it can be satirical and humorous; it can be a statement about consuming the meat of a donkey, a food commonly consumed in Italy and other countries; or it can be a statement about eating a pork butt, a food commonly consumed in the United States.

57.     The First Amendment protects an individual's right to display a bumper sticker that reads "I EAT ASS" on a vehicle.

58.     The First and Fourth Amendments prohibit the detention, search, and arrest of an individual for displaying a bumper sticker that reads "I EAT ASS" on a vehicle.

59.     On May 5, 2019, Webb was arrested.

60.     On May 5, 2019, Webb was handcuffed.

61.     On May 5, 2019, Webb was transported in a police car.

62.     On May 5, 2019, Webb was fingerprinted.

63.     On May 5, 2019, Webb was strip searched by Officer Doe 2.

64.     On May 5, 2019, Webb was booked into jail.

65.     On May 5, 2019, Webb was required to have his mugshot taken.

66.     On or about May 5, 2019, the CCSO published the following mugshot of Webb, leading to its publication in media outlets including, but not limited to, the Huffington Post and Fox News:



67.     Webb was placed in a jail cell.

68.     Webb's vehicle was searched by Officer English.

69.     No warrant was obtained or executed prior to the search of Webb's vehicle or the arrest of Webb.

70.     Officer English caused Webb's vehicle to be placed on a tow truck.

71.     Webb had to pay to recover his vehicle.

72.     Webb was released from jail only after he posted $2,500 bail.

73.     As a direct result of the unlawful actions of law enforcement, Webb lost his vehicle due to the costs incurred as a direct result of his unlawful arrest and incarceration.

74.     At no point did Officer English have probable cause or reasonable suspicion to detain Webb.

75.     At no point did Officer English have probable cause to search Webb or Webb's vehicle.

76.     At no point did Officer English, Officer Doe, or Officer Doe 2 have probable cause to arrest Webb.

77.     At no point did Officer English, Officer Doe, or Officer Doe 2 have probable cause to believe that Webb had committed an offense that was violent in nature.

78.     At no point did Officer English, Officer Doe, or Officer Doe 2 have probable cause to believe that Webb had committed an offense involving a weapon.

79.     At no point did Officer English, Officer Doe, or Officer Doe 2 have probable cause to believe that Webb had committed an offense involving a controlled substance.

80.     At no point did Officer English, Officer Doe, or Officer Doe 2 have probable cause to believe that Webb was concealing a weapon, a controlled substance, or stolen property.

81.     At no point did a judge at a first appearance find that Webb could not be released on recognizance or bond and that he was to remain in the Columbia County Jail.

82.     Upon information and belief, at no point did Officer English, Officer Doe, or Officer Doe 2 obtain the written authorization of the supervising officer on duty prior to Officer Doe 2 performing a strip search of Webb.

83.     Webb was intimidated by the actions of Officer English, Officer Doe, and Officer Doe 2.

84.     Webb did not violate any Florida law by displaying the bumper sticker on his vehicle on May 5, 2019.

85.     Displaying a bumper sticker that read "I EAT ASS" was not a crime on May 5, 2019.

86.     Declining to change the content of one's speech at the direction of law enforcement is not a crime.

87.     At all relevant times, Officer English, Officer Doe, and Officer Doe 2 were acting under color of state law, in that each officer claimed to be performing an official duty, but each officer's acts were outside the limits of lawful authority and were abusive in manner and each officer acted in a way that misused his power and was able to do so only because each officer was an official.

88.     Upon information and belief, and as evidenced by its actions, the CCSO reviewed, approved, and ratified the procedures used to detain, arrest, and silence Webb.

89.     By arresting Webb and impounding his vehicle on May 5, 2019, Officers English, Doe, and Doe 2 silenced Webb for a period of time while he was in custody and while his vehicle was in the custody of the CCSO and the towing company.

90.     Officer English's statement—in response to Webb's mother's comment that she had seen at least one other vehicle displaying a similar message—that "when I see that one, I'll pull it over also," reflects that Officer English acted pursuant to a custom, policy, or procedure for law enforcement in Columbia County, Florida to detain and arrest individuals who engage in protected speech that law enforcement officers find to be offensive or otherwise objectionable.

91.     Officer English's statement about Webb's bumper sticker—that he does not "want it on the streets of Columbia County"—reflects that he acted pursuant to a custom, policy, or procedure of law enforcement in Columbia County, Florida to detain and arrest individuals who engage in protected speech that law enforcement officers find to be offensive or otherwise objectionable.

## <u>COUNT I – FIRST AMENDMENT RETALIATION AGAINST OFFICERS ENGLISH, DOE, AND DOE 2</u>

COMES NOW Webb, and for Count I of his claim for relief against Officers English, Doe, and Doe 2, alleges and states as follows:

92.     Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 91 of this complaint as though fully set forth herein.

93.     On May 5, 2019, Webb was lawfully operating his motor vehicle on a public road in Columbia County, Florida which is located in the Middle District of Florida.

94.     At that time, Webb displayed on his vehicle the bumper sticker containing constitutionally protected speech.

95.     Specifically, Webb displayed the bumper sticker containing the phrase, "I EAT ASS."

96.     On May 5, 2019, Officer English was patrolling the public roads of Columbia County, Florida which is located in the Middle District of Florida.

97.     Officer English, upon seeing Webb's bumper sticker, executed a traffic stop of Webb's vehicle.

98.     At that time, Webb had not committed, and was not committing, any violation of any traffic law.

99.     After Webb safely pulled over, Officer English approached Webb's vehicle.

100.    Officer English told Webb that the bumper sticker was "derogatory" and ordered Webb to exit the vehicle.

101.    Officer English then conducted a pat down search of Webb.

102.    Officer English stated that he would be "furious" if his child asked him what Webb's bumper sticker meant.

103.    Officer English then provided Webb with a notice to appear.

104.    Officer English then demanded that Webb remove one of the letters from the word "ASS" so as to change the content of Webb's speech to speech that Officer English requested.

105.    When Webb asserted his rights under the First Amendment and refused to change the content of his speech, Officer English ordered Webb to remain at the scene.

106.    Officer English then initiated communication to a fellow on-duty CCSO officer, Officer Doe, to discuss the situation.

107.    Officer English explained to Officer Doe that he had pulled Webb over because of the bumper sticker Webb displayed on his vehicle.

108.    Officer English explained to Officer Doe that he had demanded that Webb remove a letter from the word "ASS" and that Webb had declined to do so.

109.    In response, Officer Doe agreed with Officer English to "arrest him, take him to jail, [and to] tow his shit."

110.   Officer English then arrested Webb in retaliation for his refusal to change the content of the speech on the bumper sticker.

111.   In retaliation for Webb's displaying of the bumper sticker containing constitutionally-protected speech and for refusing to change the content of that speech, Officer English:

a.   executed a traffic stop of Webb despite the fact that there had been no traffic violation nor any violation of any other law;

b.   detained Webb;

c.   conducted a pat down search of Webb;

d.   issued a notice to appear to Webb;

e.   demanded that Webb change the content of his speech;

f.   arrested Webb;

g.   refused to allow Webb's mother to drive her son's vehicle home;

h.   seized and placed Webb's vehicle on a tow truck;

i.   silenced Webb and restricted his speech;

j.   searched Webb's vehicle;

k.   searched Webb;

l.   handcuffed Webb;

m.   transported Webb to a jail;

n.   caused Webb to be booked into jail;

o.   caused Webb to be strip searched;

p.   caused Webb to be fingerprinted and to have his mug shot taken;

q.   caused Webb to be placed in a jail cell; and

      r.       only released Webb after $2,500 bail was posted.

112.    In retaliation for Webb's displaying of the bumper sticker containing constitutionally-protected speech and for refusing to change the content of that speech, Officer Doe:

      a.       caused Webb to be arrested;

      b.       caused Webb's vehicle to be placed on a tow truck;

      c.       silenced Webb and restricted his speech;

      d.       caused Webb's vehicle to be searched;

      e.       caused Webb to be searched;

      f.       caused Webb to be handcuffed;

      g.       caused Webb to be transported to a jail;

      h.       caused Webb to be booked into jail;

      i.       caused Webb to be strip searched;

      j.       caused Webb to be subjected to fingerprinting and a mug shot;

      k.       caused Webb to be placed in a jail cell; and

      l.       caused Webb to be released only after Webb posted $2,500 bail.

113.    In retaliation for Webb's displaying of the bumper sticker containing constitutionally-protected speech and for refusing to change the content of that speech, Officer Doe 2:

      a.       silenced Webb and restricted his speech;

      b.       subjected Webb to a strip search;

      c.       subjected Webb to fingerprinting;

      d.       subjected Webb to having his mug shot taken;

e.       placed Webb in a jail cell; and

f.       caused Webb to be released only after Webb posted $2,500 bail.

114.    Webb's choice to engage in constitutionally-protected speech by displaying the bumper sticker on his vehicle was a motivating factor—indeed, the only factor—in Officers English, Doe, and Doe 2's decision to retaliate against Webb.

115.    Officers English, Doe, and Doe 2's retaliation against Webb for exercising his right to freedom of expression would likely deter a similarly situated reasonable person from engaging in similar constitutionally-protected speech.

116.    Officers English, Doe, and Doe 2 were acting under color of state law, in that each officer claimed to be performing an official duty, but each officer's acts were outside the limits of lawful authority and were abusive in manner and each officer acted in a way that misused his power and was able to do so only because each officer was an official.

117.    Based on information and belief, Officers English, Doe, and Doe 2 were deliberately acting in accordance with a CCSO pattern, practice, policy, or custom of detaining, arresting, and strip searching individuals for engaging in protected speech.

118.    As a direct and proximate result of the violations of his constitutional rights, Webb suffered a loss of his freedom, degradation, humiliation, embarrassment, and a loss of his money.

119.    The conduct of Officers English, Doe, and Doe 2 was intentional, outrageous, and demonstrated evil motive and reckless indifference to Webb's rights, thus entitling Webb to an award of punitive damages.

120.    Officers English, Doe, and Doe 2's conduct, taken pursuant to CCSO's pattern, practice, policy, or custom of detaining, arresting, and strip searching individuals for lawful

speech, has resulted in irreparable harm to Webb and will continue to result in irreparable harm to all individuals who are detained and arrested under similar circumstances.

121.    To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against Officers English, Doe, and Doe 2, and to award him compensatory damages, both jointly and severally, in an amount that is fair and reasonable; for punitive damages against Officers English, Doe, and Doe 2 in an amount that will punish each defendant and deter each defendant and others from engaging in similar conduct; for reasonable attorneys' fees; for injunctive relief against Officers English, Doe, and Doe 2, barring them from engaging in the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

### COUNT II – UNLAWFUL *TERRY* STOP AGAINST OFFICER ENGLISH

COMES NOW Webb, and for Count II of his claim for relief against Officer English, alleges and states as follows:

122.    Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 91 of this complaint as though fully set forth herein.

123.    Under the Fourth Amendment to the United States Constitution, Webb has the right to not to be subjected to an unreasonable investigatory stop and pat down search.

124.    On May 5, 2019, Webb was lawfully operating his vehicle on a public road in Columbia County Florida, located in the Middle District of Florida.

125.    At that time, Webb lawfully displayed the bumper sticker on his vehicle containing constitutionally-protected speech.

16

126.    At that time, Officer English was on duty with the CCSO and was patrolling the public roads of Columbia County, Florida.

127.    Officer English, upon seeing the bumper sticker, executed a traffic stop of Webb's vehicle.

128.    At that time, Webb had not committed, and was not committing, any violation of any traffic law.

129.    After Webb safely pulled over, Officer English approached Webb's vehicle.

130.    Officer English told Webb that the bumper sticker was "derogatory" and asked Webb to exit the vehicle.

131.    Officer English then conducted a pat down search of Webb.

132.    Officer English intentionally committed acts that violated Webb's constitutional right to not be subjected to an unreasonable investigatory stop and pat down search.

133.    When Officer English executed a traffic stop of Webb's vehicle, asked Webb to exit the vehicle, and subjected Webb to a pat down search, Officer English did not have a reasonable suspicion that Webb was involved in, or was about to be involved in, criminal activity.

134.    Officer English's stop of Webb was not reasonable in scope in that it served no law enforcement purpose.

135.    Officer English's conduct caused Webb to suffer multiple injuries including, but not limited to, loss of his freedom, degradation, humiliation, embarrassment, and a loss of his money.

136.    Webb would not have suffered these injuries were it not for Officer English's conduct.

137.   Webb's injuries were a reasonably foreseeable consequence of Officer English's conduct.

138.   Officer English acted under color of law in that he claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner and he acted in a way that misused his power and was able to do so only because he was an official.

139.   Based on information and belief, Officer English was deliberately acting in accordance with a CCSO pattern, practice, policy, or custom of conducting unlawful investigatory stops and pat down searches of individuals engaging in protected speech.

140.   The conduct of Officer English was intentional, outrageous, and demonstrated evil motive and reckless indifference to Webb's rights, thus entitling Webb to an award of punitive damages.

141.   Officer English's conduct, taken pursuant to CCSO's pattern, practice, policy, or custom of stopping and searching individuals for engaging in protected speech, has resulted in irreparable harm to Webb and will continue to result in irreparable harm to all individuals who are stopped and searched under similar circumstances.

142.   To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against Officer English, and to award him compensatory damages, in an amount that is fair and reasonable; for punitive damages against Officer English in an amount that will punish him and deter him and others from engaging in similar conduct; for reasonable attorneys' fees; for injunctive relief against Officer English, barring him from engaging in the unlawful patterns and

practices described herein; and for such other legal and equitable relief this Court deems appropriate.

## COUNT III – UNLAWFUL SEARCH CLAIM AGAINST OFFICERS ENGLISH, DOE, AND DOE 2

COMES NOW Webb, and for Count III of his claim for relief against Officers English, Doe, and Doe 2, alleges and states as follows:

143.    Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 91 of this complaint as though fully set forth herein.

144.    Under the Fourth Amendment to the United States Constitution, Webb has the right to not to be subjected to an unreasonable search of his person and his vehicle.

145.    On May 5, 2019, Webb was lawfully operating his vehicle on a public road in Columbia County Florida, located in the Middle District of Florida.

146.    At that time, Webb lawfully displayed the bumper sticker on his vehicle containing constitutionally-protected speech.

147.    At that time, Officer English was on duty with the CCSO and was patrolling the public roads of Columbia County, Florida.

148.    Officer English, upon seeing the bumper sticker, executed a traffic stop of Webb's vehicle.

149.    At that time, Webb had not committed, and was not committing, any violation of any law.

150.    After Webb safely pulled over, Officer English approached Webb's vehicle.

151.    Officer English told Webb that the bumper sticker was "derogatory" and asked Webb to exit the vehicle.

152.    Officer English then conducted a pat down search of Webb.

153.    Officer English then demanded that Webb remove one of the letters from the word "ASS" so as to change the content of Webb's speech to speech that Officer English requested.

154.    When Webb asserted his rights under the First Amendment and refused to change the content of his speech, Officer English ordered Webb to remain at the scene.

155.    Officer English then initiated communication to a fellow on-duty CCSO officer, Officer Doe, to discuss the situation.

156.    Officer English explained to Officer Doe that he had pulled Webb over because of the bumper sticker Webb displayed on his vehicle.

157.    Officer English explained to Officer Doe that he had demanded that Webb remove a letter from the word "ASS" and that Webb had declined to do so.

158.    In response, Officer Doe agreed with Officer English to "arrest him, take him to jail, [and to] tow his shit."

159.    Officer English then arrested Webb in retaliation for his refusal to change the content of the speech on the bumper sticker.

160.    Officer English then searched Webb's person and his vehicle.

161.    Officer English did not have a warrant to search Webb's person or his vehicle.

162.    At the time of the search, there was no exigency to excuse the warrantless searches.

163.    Webb did not consent to Officer English's search of his person or his vehicle.

164.    Officer English intentionally committed acts that violated Webb's constitutional right to not be subjected to an unreasonable search of Webb's person or his vehicle.

165.    Following Webb's unconstitutional arrest and search of his person and vehicle, Officer Doe 2 subjected Webb to a strip search.

166.   Officers English, Doe, and Doe 2's conduct caused Webb to suffer multiple injuries including, but not limited to, loss of his freedom, degradation, humiliation, embarrassment, and a loss of his money.

167.   Webb would not have suffered these injuries were it not for Officers English, Doe, and Doe 2's conduct.

168.   Webb's injuries were a reasonably foreseeable consequence of Officers English, Doe, and Doe 2's conduct.

169.   Officers English. Doe, and Doe 2 acted under color of law in that each claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner and each acted in a way that misused his power and was able to do so only because each was an official.

170.   Based on information and belief, Officers English, Doe, and Doe 2 were deliberately acting in accordance with a CCSO pattern, practice, policy, or custom of conducting unlawful investigatory stops, pat down searches, and strip searches of individuals engaging in protected speech.

171.   The conduct of Officers English, Doe, and Doe 2 was intentional, outrageous, and demonstrated evil motive and reckless indifference to Webb's rights, thus entitling Webb to an award of punitive damages.

172.   Officers English, Doe, and Doe 2's conduct, taken pursuant to CCSO's pattern, practice, policy, or custom of stopping, searching, and then strip-searching individuals for engaging in lawful speech, has resulted in irreparable harm to Webb and will continue to result in irreparable harm to all individuals who are stopped, searched, and then strip searched under similar circumstances.

173.    To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against Officers English, Doe, and Doe 2, and to award him compensatory damages, in an amount that is fair and reasonable; for punitive damages against Officers English, Doe, and Doe 2 in an amount that will punish him and deter him and others from engaging in similar conduct; for reasonable attorneys' fees; for injunctive relief against Officers English, Doe, and Doe 2, barring each from engaging in the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

## COUNT IV – UNLAWFUL ARREST CLAIM AGAINST OFFICERS ENGLISH AND DOE

COMES NOW Webb, and for Count IV of his claim for relief against Officers English and Doe, alleges and states as follows:

174.    Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 91 of this complaint as though fully set forth herein.

175.    Under the Fourth Amendment to the United States Constitution, Webb has the right to not to be arrested without probable cause.

176.    On May 5, 2019, Webb was lawfully operating his vehicle on a public road in Columbia County Florida, located in the Middle District of Florida.

177.    At that time, Webb lawfully displayed the bumper sticker on his vehicle containing constitutionally-protected speech.

178.    At that time, Officer English was on duty with the CCSO and was patrolling the public roads of Columbia County, Florida.

179.    At that time, Officer Doe was also on duty with the CCSO.

180.     Officer English, upon seeing the bumper sticker, executed a traffic stop of Webb's vehicle.

181.     At that time, Webb had not committed, and was not committing, any violation of any law.

182.     After Webb safely pulled over, Officer English approached Webb's vehicle.

183.     Officer English told Webb that the bumper sticker was "derogatory" and asked Webb to exit the vehicle.

184.     Officer English then conducted a pat down search of Webb.

185.     Officer English then demanded that Webb remove one of the letters from the word "ASS" so as to change the content of Webb's speech to speech that Officer English requested.

186.     When Webb asserted his rights under the First Amendment and refused to change the content of his speech, Officer English ordered Webb to remain at the scene.

187.     Officer English then initiated communication to a fellow on-duty CCSO officer, Officer Doe, to discuss the situation.

188.     Officer English explained to Officer Doe that he had pulled Webb over because of the bumper sticker Webb displayed on his vehicle.

189.     Officer English explained to Officer Doe that he had demanded that Webb remove a letter from the word "ASS" and that Webb had declined to do so.

190.     In response, Officer Doe agreed with Officer English to "arrest him, take him to jail, [and to] tow his shit."

191.     After conferring with Officer Doe, Officer English executed an arrest of Webb in retaliation for his refusal to change the content of the speech on his bumper sticker.

192.    Officers English and Doe intentionally committed acts that violated Webb's constitutional right to not be arrested without probable cause.

193.    Officers English and Doe did not have an arrest warrant.

194.    Officers English and Doe did not know of any facts or circumstances that would cause a reasonable officer to believe that Webb has committed, is committing, or is about to commit, an offense.

195.    Officers English and Doe's conduct caused Webb to suffer multiple injuries including, but not limited to, loss of his freedom, degradation, humiliation, embarrassment, and a loss of his money.

196.    Webb would not have suffered these injuries were it not for Officers English and Doe's conduct.

197.    Webb's injuries were a reasonably foreseeable consequence of Officers English and Doe's conduct.

198.    Officers English and Doe acted under color of law in that each claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner and each acted in a way that misused his power and was able to do so only because each was an official.

199.    Based on information and belief, Officers English and Doe were deliberately acting in accordance with a CCSO pattern, practice, policy, or custom of conducting unlawful investigatory stops and pat down searches of individuals engaging in protected speech.

200.    The conduct of Officers English and Doe was intentional, outrageous, and demonstrated evil motive and reckless indifference to Webb's rights, thus entitling Webb to an award of punitive damages.

201.    Officers English and Doe's conduct, taken pursuant to CCSO's pattern, practice, policy, or custom of stopping and searching individuals for engaging in lawful speech, has resulted in irreparable harm to Webb and will continue to result in irreparable harm to all individuals who are stopped and searched under similar circumstances.

202.    To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against Officers English and Doe, and to award him compensatory damages, both jointly and severally, in an amount that is fair and reasonable; for punitive damages against Officers English and Doe in an amount that will punish each officer and deter each officer and others from engaging in similar conduct; for reasonable attorneys' fees; for injunctive relief against Officers English and Doe, barring him from engaging in the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

## COUNT V – DEPRIVATION OF RIGHTS SECURED BY THE FOURTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AGAINST OFFICERS ENGLISH, DOE, AND DOE 2

COMES NOW Webb, and for Count V of his claim for relief against Officers English, Doe, and Doe 2, alleges and states as follows:

203.    Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 91 of this complaint as though fully set forth herein.

204.    After Webb was unconstitutionally arrested, searched, and transported to the Columbia County jail, he was strip searched by Officer Doe 2.

205.    Section 901.211 of the Florida Statutes sets forth the law governing the strip searches of persons arrested in the State of Florida.

206.    Webb was not arrested for a felony.

207.    Webb was not arrested for an offense that was violent in nature.

208.    Webb was not arrested for an offense involving a weapon.

209.    Webb was not arrested for an offense involving a controlled substance.

210.    Officers English, Doe, and Doe 2 did not have probable cause to believe that Webb was concealing a weapon, a controlled substance, or stolen property.

211.    At no point did a judge at a first appearance find that Webb could not be released on recognizance or bond and that he was to remain in the Columbia County jail.

212.    Upon information and belief, at no point did Officer English, Officer Doe, or Officer Doe 2 obtain the written authorization of the supervising officer on duty prior to Officer Doe 2 performing a strip search of Webb.

213.    Officers English, Doe, and Doe 2, under color of law—in that each claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner and each acted in a way that misused his power and was able to do so only because each was an official—subjected Webb, or caused Webb to be subjected to, the deprivation of his Fourth Amendment right under the Constitution of the United States, to be free from unreasonable searches of his person when Officer Doe 2 unreasonably, unnecessarily, and unlawfully performed a strip search of Webb.

214.    Upon information and belief, Officers English, Doe, and Doe 2 were deliberately acting in accordance with a CCSO pattern, practice, policy, or custom of arresting, searching, and conducting unlawful strip searches of individuals engaging in protected speech.

215.    The conduct of Officers English, Doe, and Doe 2 was intentional, outrageous, and demonstrated evil motive and reckless indifference to Webb's rights, thus entitling Webb to an award of punitive damages.

216.    Officers English, Doe, and Doe 2's conduct, taken pursuant to CCSO's pattern, practice, policy, or custom of stopping, searching, and then strip-searching individuals for engaging in lawful speech, has resulted in irreparable harm to Webb and will continue to result in irreparable harm to all individuals who are stopped, searched, and then strip searched under similar circumstances.

217.    To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against Officers English, Doe, and Doe 2, and to award him compensatory damages, in an amount that is fair and reasonable; for punitive damages against Officers English, Doe, and Doe 2 in an amount that will punish him and deter him and others from engaging in similar conduct; for reasonable attorneys' fees; for injunctive relief against Officers English, Doe, and Doe 2, barring each from engaging in the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

## **COUNT VI – GOVERNMENT ENTITY LIABILITY AGAINST CCSO**

COMES NOW Webb and for Count VI of his claim for relief against CCSO, alleges and states as follows:

218.    Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 217 of this complaint as though fully set forth herein.

219.     CCSO is liable for violating Webb's constitutional rights because Officers English, Doe, and Doe 2 violated Webb's constitutional rights.

220.     CCSO is liable for Officers English, Doe, and Doe 2's conduct because CCSO's official policy or custom was the moving force behind Webb's injuries.

221.     Officers English, Doe, and Doe 2's conduct, taken pursuant to CCSO's pattern, practice, policy, or custom of retaliating against individuals who engage in protected speech, conducting *Terry* stops of individuals who engage in protected speech, searching individuals and their property for engaging in protected speech, arresting individuals who engage in protected speech, strip searching individuals who engage in protected speech, and initiating criminal proceedings against individuals for engaging in protected speech, has resulted in irreparable harm to Webb and will continue to result in irreparable harm to all individuals under similar circumstances.

222.     Officers English, Doe, and Doe 2 acted pursuant to a CCSO's official policy or custom because:

a.      based on information and belief, CCSO created, adopted, or ratified a rule or regulation regarding actions to be taken in response to individuals who engage in protected speech;

b.      based on information and belief, CCSO made a policy statement or decision regarding actions to be taken in response to individuals who engage in protected speech; and

c.      based on information and belief, the practice or course of conduct taken by Officers English and Doe was so widespread that it acquired the force of law—even if the practice had not been formally approved.

223.     The official policy or custom existed because it was so persistent, widespread, and repetitious that CCSO's policy-maker either knew of it or should have known of it.

224.     Sheriff Hunter is, and was at all relevant times, CCSO's policy-maker.

225.     To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against CCSO, and to award him compensatory damages, in an amount that is fair and reasonable; for reasonable attorneys' fees; for injunctive relief against CCSO, barring it from engaging in the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

## COUNT VII – GOVERNMENT ENTITY LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE AGAINST CCSO

COMES NOW Webb and for Count VII of his claim for relief against CCSO, alleges and states as follows:

226.     Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 217 of this complaint as though fully set forth herein.

227.     CCSO is liable for failing to adequately train and supervise its officers and this failure caused Officers English, Doe, and Doe 2 to violate Webb's constitutional right to be free from retaliation for engaging in speech protected by the First Amendment.

228.     CCSO is liable for failing to adequately train and supervise its officers and this failure caused Officers English, Doe, and Doe 2 to violate Webb's constitutional right to be free from search, seizure, detention, arrest, strip search, and prosecution without probable cause in violation of the Fourth Amendment for engaging in protected speech.

229.    Officers English, Doe, and Doe 2 violated Webb's constitutional right to be free from retaliation for engaging in speech protected by the First Amendment.

230.    Officers English, Doe, and Doe 2 violated Webb's constitutional right to be free from search, seizure, detention, arrest, strip search, and prosecution without probable cause in violation of the Fourth Amendment for engaging in protected speech.

231.    Officers English, Doe, and Doe 2 were not adequately trained or supervised in responding to individuals exercising their right to speak freely and to express themselves consistent with the First Amendment.

232.    Sheriff Hunter was, at all times, the official policy-maker for CCSO.

233.    Based on information and belief, Sheriff Hunter knew, based on at least one earlier instance of unconstitutional conduct materially similar to Officers English, Doe, and Doe 2's violation of Webb's constitutional rights, that additional training and supervision was needed to avoid the officers' violation of Webb's First and Fourth Amendment rights likely recurring in the future.

234.    Based on information and belief, Sheriff Hunter made a deliberate choice not to provide additional training and supervision to Officers English, Doe, and Doe 2.

235.    Sheriff Hunter was on notice that Officer English had a history of violating the law in that he disclosed his criminal history on his employment application to the CCSO.

236.    To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against CCSO, and to award him compensatory damages, in an amount that is fair and reasonable; for reasonable attorneys' fees; for injunctive relief against CCSO, requiring it to adequately train

and supervise its officers so as to avoid recurrences of the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

### COUNT VIII – SUPERVISOR LIABILITY AGAINST SHERIFF HUNTER

COMES NOW Webb and for Count VIII of his claim for relief against Sheriff Hunter, alleges and states as follows:

237.    Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 217 of this complaint as though fully set forth herein.

238.    Sheriff Hunter, who supervised Officers English, Doe, and Doe 2, is liable in his supervisory capacity for violating Webb's constitutional right to be free from retaliation for engaging in speech protected by the First Amendment.

239.    Officers English, Doe, and Doe 2 violated Webb's constitutional right to be free from retaliation for engaging in speech protected by the First Amendment.

240.    Officers English, Doe, and Doe 2 violated Webb's constitutional right to be free from search, seizure, detention, arrest, strip search, and prosecution without probable cause in violation of the Fourth Amendment for engaging in protected speech.

241.    When Webb's constitutional rights were violated:

    a.    based on information and belief, Sheriff Hunter personally participated in the violation of Webb's constitutional rights;

    b.    based on information and belief, a history of widespread abuse, meaning abuse that was obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences, put Sheriff Hunter on notice of the need to take corrective action and he failed to do so;

c. based on information and belief, Sheriff Hunter intentionally implemented an official policy or custom that resulted in Officers English, Doe, and Doe 2 acting with deliberate indifference, meaning reckless disregard, to Webb's First and Fourth Amendment rights;

d. based on information and belief, Sheriff Hunter directed Officers English, Doe, and Doe 2 to take the action that resulted in the violation of Webb's First and Fourth Amendment rights;

e. based on information and belief, Sheriff Hunter knew that Officers English, Doe, and Doe 2 would take actions in violation of Webb's First and Fourth Amendment rights and failed to stop Officers English, Doe, and Doe 2 from doing so.

242. To the extent Webb prevails in the instant case, he is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against Sheriff Hunter, and to award him compensatory damages, in an amount that is fair and reasonable; for reasonable attorneys' fees; for injunctive relief against Sheriff Hunter, requiring him to adequately train and supervise his officers so as to avoid recurrences of the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

## COUNT IX – INJUNCTIVE RELIEF

COMES NOW Webb and for Count IX of his claim for relief against all Defendants, alleges and states as follows:

243.    Webb hereby re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 242 of this complaint as though fully set forth herein.

244.    Webb has no adequate remedy at law and will suffer irreparable harm unless this Court grants a permanent injunction enjoining all defendants from detaining and arresting individuals for engaging in protected speech.

245.    Based on information and belief, all Defendants have a pattern, practice, policy, or custom of detaining, searching, arresting, and strip searching individuals for engaging in protected speech.

246.    Detaining, searching, arresting, and strip searching individuals for engaging in protected speech violates the First and Fourth Amendments under the Constitution of the United States to freedom of expression and to be free from unreasonable searches, seizures, arrests, and strip searches without probable cause, and results in irreparable harm for which there is no adequate remedy at law.

247.    The Defendants' misconduct, as alleged herein, has irreparably harmed Webb and will continue to result in irreparable harm to Webb and all individuals detained, searched, arrested, and strip searched under similar circumstances by Defendants.

248.    Absent a permanent injunction restraining and enjoining all Defendants from detaining. searching, arresting, and strip searching individuals for engaging in protected speech, all Defendants will continue to engage in these unlawful practices and this will result in irreparable harm to Webb and all others detained, searched, arrested, and strip searched under similar circumstances.

249.    Webb is entitled to a permanent injunction because monetary damages will not adequately compensate him for the irreparable harm caused by all Defendants, or the future harm that will ensue, and injunctive relief is necessary to prevent multiple lawsuits.

250.    Webb has no adequate remedy at law for the injuries caused by all Defendants, and Webb will continue to suffer great and irreparable injury in the future unless all Defendants are restrained and enjoined by this Court from engaging in the conduct alleged herein.

WHEREFORE, Webb respectfully asks this Court to enter judgment in his favor and against all Defendants and for a permanent injunction against all Defendants, barring them from encouraging, requiring, or permitting the police force to engage in the unlawful patterns and practices described herein; and for such other legal and equitable relief this Court deems appropriate.

Respectfully submitted,

**Margulis Gelfand, L.L.C.**

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND*
IAN T. MURPHY*
ATTORNEYS FOR PLAINTIFF
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
*To Seek Admission *Pro Hac Vice*

**The Bonderud Law Firm, P.A.**

/s/ *Andrew Bonderud*
ANDREW BONDERUD
ATTORNEY FOR PLAINTIFF
Trial Counsel
301 West Bay Street, No. 1433
Jacksonville, FL 32202
Telephone: 904.438.8082
Facsimile: 904.800.1482
bonderudlaw@gmail.com

35